**GEORGE F. HAID**, Administrator of the Estate of Bridget Prendiville, Appellant, v. ADELE PREN-DIVILLE.

Division One, March 14, 1922.

1 ACCOUNTING: Odium Spoliatoris: Presumption. In a suit for an accounting, where defendant is shown to have destroyed books of account containing the entries in regard to the transactions involved and to have fabricated and sought to impose upon the court false books of account, it will be presumed that the books destroyed would have established the plaintiff's demand to be just and his allegations of the amount thereof will be taken as true.

2. ———: Action For: When Sustainable. To sustain an action for an accounting, some such business relation must be shown to have existed between the parties as to create a liability on the part of one to the other. The fact that the relation of principal and agent may in form have existed between them lends no force to plaintiff's claim unless it be shown that a liability was thereby created on the part of defendant.

3. ———: ———: ———: Mother and Daughter. Where a mother and her two unmarried daughters lived together as a family for more than ten years before the mother's death, with the implied, if not express, understanding with the mother that she was the head of the family and that all the family expenses, with the possible exception of the expenses of clothing for the daughters, were to be paid out of the rents of the mother's property and that the daughters were to receive nothing for caring for the mother and her property, and the mother turned over to one of the daughters her money received from insurance on the life of her husband and other moneys, all of which the daughter deposited in bank to her own credit, and such daughter also collected the rents from her mother's property and deposited them in like manner and out of all such moneys paid for improvements and repairs, insurance and taxes on her mother's property and also the family expenses and for such purposes used substantially all the moneys so received, and the mother, though advanced in years, was able to take and did take part in conducting her affairs and knew generally how they were conducted by her daughter and made no objection thereto and never claimed that her daughter owed her anything and there was no evidence of any undue influence exerted

over her by her daughter or that her daughter ever defrauded or misled her, and such condition of affairs, continued until the mother's death, the administrator of the mother's estate could not maintain a suit for an accounting against the daughter who had thus had the management of her mother's business affairs. [Following Barnett v. Kemp, 258 Mo. 139.]

Appeal from St. Louis City Circuit Court.—*Hon. Wilson A. Taylor,* Judge.

AFFIRMED.

*Alfred J. Strobans, August Walz* and *James M. Douglas* for appellant.

(1) All persons who stand in a fiduciary relation to others, must account for all the profits made upon moneys in their hands by reason of such relation. I Perry on Trusts, sec. 430; Underhill on Trusts and Trustees (Am. Ed.), pp. 321, 443; Tufts v. Latshaw, 172 Mo. 373. (a) The interest paid by the bank was paid for the use of Bridget Prendiville's money, and became as much her property as the principal itself. Landis v. Scott, 32 Pa. St. 503. (b) Respondent is compelled to account for the interest. Cruce v. Cruce, 81 Mo. 676; Murdock v. Priest, 129 Mo. 499; In re estate of Danforth, 66 Mo. App. 590; Berry v. Berry, 218 S. W. 693; Pullis v. Somerville, 218 Mo. 654. (c) When one who holds property in a fiduciary capacity mixes his own property with it, so that the funds cannot be separated nor the amount of each ascertained the whole becomes, both at law and equity, the property of the trust estate. Tufts v. Latshaw, 172 Mo. 373. (d) Respondent is guilty of a breach of trust. Gaston v. Hayden, 98 Mo. App. 683. (2) The trust is terminable at the will of the *cestui que trust* and it is the trustee's duty to make an accounting and to turn over the property to the *cestui que trust;* failing to do so the trustee is not entitled to compensation. Folk v. Wind, 124 Mo. App. 583; Supreme Lodge v. Dalzell, 223 S. W. 790; Harvey v. Schwettman, 180 S. W. 413.

(a) Respondent is liable for compound interest for converting money to her own use and should be made to account for same. Pullis v. Somerville, 218 Mo. 654. (3) The evidence shows that respondent appropriated to her own use the sum of $1,040 from the funds of Bridget Prendiville to pay her personal obligation to "Pat Durney" for which she failed to account. (4) The undisputed evidence shows, and the court so found, that the rent account book is a fabrication and that her testimony concerning this book is false. The evidence shows that the respondent suppressed her books containing a true record of the rents which she received and fabricated other books purporting to be a true record of the rent collected by her, to support her false testimony and therefore the court should have found in favor of appellant in the sum of $40,000 as averred in his pleadings. Pomeroy v. Benton, 77 Mo. 87, 88; Allamong v. Peoples, 75 Mo. App. 280; Tracy v. Buchanan, 167 Mo. App. 437; Stucks v. Candy Co., 158 Mo. App. 359; Shawhan v. Shawhan, 195 Mo. App. 450. (a) Rule also applies to the withholding of evidence. State v. Alexander, 119 Mo. 462; Allamong v. Peoples, 75 Mo. App. 280. (b) Only slight evidence is sufficient to support the rule. Oglebay v. Corby, 96 Mo. 285. (c) When a party fails to produce evidence peculiarly within his control the presumption arises that the evidence is adverse to the party so withholding it. Bent v. Lewis, 88 Mo. 471; Dalrymple v. Craig, 149 Mo. 359; W. U. Tel. Co. v. Lamb, 203 S. W. 752. (5) Where the charges are lumped and no statement of the cost and the nature of the improvements, there was no account stated as between the parties and it was error for the court to dismiss the bill. Glines v. Realty Co., 213 S. W. 501; Gaston v. Trust, 35 N. J. Eq. 60; Quirk v. Quirk, 155 Fed. 199. (6) There is no evidence to show that Bridget Prendiville agreed to pay for the living expenses of the entire household consisting of herself, respondent and another daughter for which respondent in her account charges her mother $6,300, and that the court should not have allowed re-

spondent to take credit therefor. The presumption is, that such maintenance is provided gratuitously. Kingston v. Roberts, 175 Mo. App. 75; Bircher v. Boemler, 204 Mo. 563; Snyder v. Free, 114 Mo. 360. (7) When services are rendered by a child to its parent the law implies that the services were gratuitous. Stone v. Troll, 134 Mo. App. 308; Gibney v. Transit Co., 204 Mo. 722. (8) An agreement to pay rent will not be implied, as where the occupant was a member of the family, and there is no implied agreement to pay by mere occupancy. 2 McAdam, Landlord & Tenant, p. 1094; Bank v. Aull, 80 Mo. 199; Pullis v. Somerville, 218 Mo. 643; Collyer v. Collyer, 113 N. Y. 442. (9) The burden of proof is on the trustee or agent in charge of the property. Landis v. Scott, 32 Pa. St. 495; Cruce v. Cruce, 81 Mo. 676. (10) Frank Prendiville qualified and testified to the reasonable rental value of the Prendiville property and thereby "raised the presumption" and the court should have taken this testimony into consideration. Green v. Winter, 1 Johns Ch. 26; Ex parte Cassel v. Spayd, 3 Watts, 408; Elmer v. Loper, 25 N. J. Eq. 475; 2 Perry on Trusts, p. 351, par. 821; Cunningham v. Cunningham, 81 S. C. 506; Miller v. Whittier, 36 Me. 577; Heath v. Waters, 40 Mich. 457; Perrin v. Lepper, 72 Mich. 454; Shoemaker v. Crawford, 82 Mo. App. 487; Maguire v. Labeaume, 7 Mo. App. 185; Thomas v. Mallinckrodt, 43 Mo. 58; Stuckes v. Candy Co., 158 Mo. App. 359, 360; Landis v. Scott, 32 Pa. St. 503; Ferry Co. v. Moore, 18 Abb. N. C., 106; Amour v. Gaffey, 30 N. Y. App. Div. 121. (11) The petition in this cause contains a prayer for general relief, the court should have granted the relief within the scope of the pleadings which was sustained by the evidence and not dismiss plaintiff's bill. Pomeroy v. Benton, 57 Mo. 531; McQuitty v. Steckland, 190 S. W. 592; McLure v. Bank, 252 Mo. 520; Gibson v. Shull, 251 Mo. 491; Phillips v. Jackson, 240 Mo. 336.

*Walther, Muench & Hecker* for respondent.

(1) An accounting should not be ordered where there was no relationship of principal and agent, strictly speaking, and where the circumstances surrounding the dealings of the parties clearly indicate that no accounting was ever asked for or ever expected. 2 C. J. 739, notes 21 and 22; Barnett v. Kemp, 258 Mo. 139; Rich v. Austin, 40 Vt. 416; Carrau v. Chapotel, 47 La. Ann. 408; Evans v. Evans, 2 Coldw. 143; McCarty v. McCarty's Admr., 11 Ky. L. R. 366; Hamilton v. Hamilton, 44 N. Y. S. 97; Robins v. Robins, 3 Atl. 264; Tindall v. Powell, 4 Jur. (N. S.) 944. (2) An accounting should be refused, where the person standing in the relationship of the principal, through his own carelessness or indifference, has permitted records to be lost or destroyed, which are necessary to the statement of a full account. (3) The rule *"in odium spoliatoris"* goes no farther than to require that every reasonable intendment be presumed against the spoliator, and this presumption does not take the place of evidence or relieve the plaintiff of the *onus* of proving his own case by competent evidence. 22 C. J. 109, notes, 14 to 17; 10 R. C. L. sec. 32, p. 885, notes 12 and 14; Patch Mfg. Co. v. Perfection Lodge, 77 Vt. 294; Gray v. Haig, 20 Deav. 226; Jones on Evidence, sec. 22; Best on Evidence (10 Ed.) sec. 415; Straight v. Ins. Co., 166 N. W. 84; 1 Wigmore on Evidence, sec. 291; Roe v. Harvey, 4 Burr. 2489; Jones' Blue Book of Evidence, sec. 20; Gage v. Parmalee, 87 Ill. 343; Moriarity v. Ry. Co., L. R. (5 Q. B.) 319. (4) Shopbooks of original entry, kept in the usual course of business, are competent evidence even in favor of the party offering them. Morrow v. Ry. Co., 140 Mo. App. 216. (5) Appellant's own testimony as to the rental value of the real estate in controversy would have been proper in a case where such value was the issue, as, for instance, a case of ejectment, dower, etc.; but where the sole question was one of actual receipts, the mere value was not probative of the issue.

SMALL, C.—I.  Appeal from the Circuit Court of
the City of St. Louis.  Suit in equity for accounting.
Plaintiff, administrator of Bridget Prendiville who died
in St. Louis, October 12, 1915, alleges in his petition 'in
substance, as follows: That said Bridget was the wife
of Maurice Prendiville who died March 3, 1905; that in
1904 and 1905 said Maurice withdrew from the bank and
gave his wife various sums of money aggregating $2230.-
40, which said Bridget at the time, entrusted to defend-
ant Adele Prendiville, the daughter of herself and her
said husband, together with rents amounting to $1542.50,
which said Bridget had collected from certain real es-
tate in said city prior to her husband's death, which
said defendant never refunded or accounted for.  That
upon her husband's death, said Bridget became entitled
to certain life insurance amounting to about $8000.  That
at and prior to her husband's death, she and her husband,
as tenants by the entirety, owned the home in which they
resided, being seventy-five feet front on the west side
of Prairie Avenue in said city (of which she became the
sole owner by reason of his death), and also the owner
of a life estate in seventy-five feet on the south side of
St. Ferdinand Avenue, improved with four brick dwell-
ings, and one hundred and ten feet on Bacon Street with
five brick dwellings thereon.  That said Bridget was
seventy-five years old when she died, and was feeble and
infirm, uneducated and without knowledge of business
or property, and her daughter, the defendant Adele, took
charge of the person and property of her mother after
the father's death, collected said life insurance and de-
posited same in her own name in the bank, took her
mother away from her old home to the home of said Adele
where she resided with said Adele and another daughter,
Martha, until her death.  That said Adele caused the old
home to be demolished and a building, containing eight
flats, to be erected thereon, and in all respects controlled
and managed the property of said Bridget, as if it were

the property of said Adele, without consulting said Bridget, collecting all the rents and profits thereof and depositing same in her own name in the bank; that the living expenses of said Bridget were small, and that although the annual rental of her property amounted to about $4500, yet at the time of her death, all the personal property of said Bridget which plaintiff as administrator could find, was a lot of old household furniture, appraised at $54, and plaintiff was informed by said Adele and Martha, that their mother left no other personal property and no books of account or other papers, but that said Adele promised to render an account of her dealings with her mother's property, but failed to do so. That said Adele kept the money of said Bridget as received and collected by her and deposited it in the bank in her own name and received, or should have received, interest thereon. That plaintiff being remediless at law, prays that the defendant be required to render an account of all the money, property and effects of said Bridget which came into her hands and of all the interest received or earned on same, and of all her proper disbursements, and be ordered to pay the balance found due her mother's estate to the plaintiff and for general relief.

The answer admitted that plaintiff was administrator. That her father and mother died as alleged, owning the real estate as stated in the petition, and left the four children named in the petition. Denied all other allegations of the petition. Further the defendant stated in her answer, that she did receive $6971 life insurance, belonging to her mother, which at her mother's request, she deposited in her own name in her own bank account for safe keeping, and that her mother "did also request and direct this defendant for her, the said Bridget, to collect the various rents falling due to said Bridget, enter the same upon an account thereof, to be kept, and to look after the renting and preservation of the property being so held by said Bridget. That defendant did so serve said Bridget Prendiville until the date of her death and during all said time duly accounted to

said Bridget for whatever amounts came into her posses-
sion, or into her bank account, fully and to the entire
satisfaction of said Bridget Prendiville, so that at the
date of the latter's death, there was no amount in the
hands of this defendant unaccounted for to said Bridget
Prendivillle for which this defendant should account for
to plaintiff as her administrator, a full and complete state-
ment of all the amounts so collected by the defendant and
her disbursement and accounting thereof, being here-
with filed as Exhibit A.'' Said Exhibit shows total rents
collected $31,668.25; insurance collected $6971.10; total
$38,639.35. It also shows many items of expense paid
out covering ten closely printed pages of the record, and
totalling about $40,000.

The answer then, by way of counterclaim, states that
the defendant served her mother as agent in managing
her property, renting it, collecting rents, making repairs,
paying taxes, etc., from April 1, 1905, to October 12,
1915 (the date of her death), for which services her
mother promised to pay her a reasonable compensation,
which services were reasonably worth five per centum
on the amount so collected and disbursed, which was
$39,000, or $1950, for which the defendant asks judgment
against the plaintiff as administrator.

As a further counterclaim, plaintiff says she paid her
mother's funeral expenses amounting to $275, for which
she also asks judgment against plaintiff as said adminis-
trator.

The reply puts the new matter alleged in the answer
in issue and alleges the rents collected were in excess
of $40,000 instead of $31,668.25, as alleged in the answer.

The court below found against the plaintiff on his
petition and against the defendant on her counterclaims.
The plaintiff appealed to this court.

At the time of the father's death there were four
children, three daughters, Adele, Martha, Mary (Mrs.
Morley) and a son, Frank. The son married in 1907,
two years after his father's death, and then left the
family, living at home until then. It seems he was

estranged from his mother, barely spoke to her before his marriage, and never visited her after his marriage, during her lifetime. Mrs. Morley lived in her own home but she and her children often visited her mother. After the son married, the two girls, Adele and Martha, continued to live with their mother up to the time of her death, October 12, 1915. Generally Adele collected all the rents and attended to managing and doing everything necessary, with reference to caring for the real estate and property for her mother. The rents collected were treated as common funds for the support of the family, as well as for paying taxes, repairs and expenses connected with the property. Sometimes rent was collected by the granddaughter, Eunice Morley, and sometimes by Mrs. Morley and paid to the mother, Mrs. Prendiville, herself.

This case was not instituted by the plaintiff administrator of his own accord but at the instigation of the son who agreed to pay all expenses of the litigation and save the administrator harmless therefrom. The two sisters, Mary and Martha, took no part in having the suit brought.

At the trial the defendant Adele produced a book, Exhibit 4, which she testified was a book of original entry, showing all the rents collected from the Bacon Street and St. Ferdinand Avenue houses, from 1905 to the date of her mother's death in 1915. Also another book, plaintiff's Exhibit 2, which she testified was a book of original entry showing all, the rents collected from the Prairie Avenue houses after their completion in 1908, until her mother's death. These books did not show the expenses paid out or any credits she was entitled to. But presumably showed $31,668.25, rents collected as charged against herself in the Exhibit attached to her answer. But both these books were comparatively new and Exhibit 4 contained conclusive evidence that it was a fabrication, as it contained a printed statement which was part of the book itself, dated in 1914, showing the parcel post charges, zones, etc., which were not

established by Act of Congress until 1912, seven years after defendant Adele swore she entered the first charges in said book. After introducing these books they were withdrawn by defendant, but introduced by plaintiff to show that defendant Adele had fabricated evidence. The lower court expressly found said Exhibit 4 was a fabrication and we have no doubt said Exhibit 2 was also. So that there is nothing in the evidence to show the total rents she collected except her admission in the Exhibit attached to her answer, to-wit: $31,668.25. But Frank Prendiville, the defendant's brother, who was a real estate agent, testified to the rental value of the property during his mother's lifetime, after his father's death, which, according to his estimate, aggregated $43,931.50 during that time. In this calculation no allowance was made for vacancies. There was evidence, both by him and defendant and her witnesses, that the vacancies were substantial and considerable, but not as to the exact extent thereof. Said Frank Prendiville also testified that his sister Adele had books in which she kept the rent accounts other than the fabricated books. That she showed him these other books the day of his mother's funeral. But he did not testify as to the amount of rents such books showed his sister had collected. They were not put in evidence and defendant Adele testified she kept no other books except those we have found were fabrications. There was no account pretended to have been kept by defendant Adele of the moneys paid out by her for her mother, but it was conceded that she did pay out, substantially, all the money necessary for the household expenses of the family during her moter's lifetime, for the taxes, general and special, and repairs and other expenses connected with her mother's property, including $10,000 or $12,000 for new buildings on the Prairie Avenue property and remodelling some of the houses on the other property and $1,250 for a monument on the family lot in the cemetery. The household expenses were estimated at $50 a month by said Adele in her testimony and by her sister Mrs. Morley in her testimony. The

mother's expenses for clothing was testimated at $100 to $150 a year by them. The evidence showed that the mother was charged with rent, in defendant's said Exhibit, for a house defendant Adele owned, in which the family lived for four years, and also. with rent for a house in which the family lived some eleven months, which was owned by said Martha. The mother was also charged with rent of the other houses they occupied after moving from their old home on Prairie Avenue in 1908, which the evidence tended to show she herself rented. The evidence showed that defendant Adele had some $2,000 of her own money when her father died and received $2,600 as the beneficiary of a policy of insurance on his life, her sister Martha receiving $2,900 and her mother $6971.10 from a like source. The mother's life insurance as well as rents received by Adele were deposited by Adele in various banks or trust companies, in her name with her own moneys. In 1914 one of defendant's witnesses testified that Mrs. Prendiville said her expenses equaled the rents and she had no money. Mrs. Morley, the married sister, testified that about two years before her mother's death, she asked her mother for money to keep her home from being sold out under a mortgage, and her mother refused and said she did not have the money. There was a great mass of evidence showing the expenses paid out in connection with the property for taxes, insurance, repairs, etc., which in a general way tended to support the charges made therefor, by the defendant in the exhibit attached to her answer.

According to the evidence, Mrs. Prendiville was about eighty years old at the time of her death but generally during her lifetime, she seems to have been able to take, and did take, part in conducting her affairs, and to have generally known how they were being managed by her daughter Adele, although she was not an educated woman and could only write her name. There is no evidence of any objection on her part to her daughter's management or that she ever claimed that her daughter owed her anything, nor any evidence that her daughter

ever exerted any undue influence over her or defrauded or misled her in any way. The two daughters, Adele and Martha, were never in business, but, remained at home with their mother and cared for her and did the housework. They had no outside income, except from the houses they owned. The house on Garfield Avenue was completed in 1906 and rented for about $45 a month. It cost $5,900 and was built and owned jointly by Adele and Martha, but in 1914 Adele purchased Martha's half for $3,000. Martha then built a house on Lincoln Street. There was no evidence that the mother ever agreed to pay either of her daughters anything for their services. We are satisfied from the testimony that they all lived together, during their mother's lifetime, as a family with the implied, if not express, understanding with the mother that she was the head of the family and that all the family expenses were to be paid out of the rents of her property unless, perhaps, the daughters' expense for clothing, as to which there is no evidence, and that the daughters were to receive nothing for their services in caring for the mother and her property. Plaintiff also introduced in evidence the bank accounts of the defendant Adele. These accounts showed balances in her favor at the time of her mother's death as follows: St. Louis Union Bank two certificates of deposit and interest $2,149; Mississippi Valley Trust Co., $1,297.10; Mercantile Trust Co., $471.22. Total $3917.32. After her mother's death, Adele paid her mother's funeral expenses, $275, and perhaps other bills she was owing at the time of her death, as there seem to have been no debts proved up against her estate. Plaintiff claims the funds in bank should be accounted for as the funds of the mother. There is no evidence that Adele when her mother died, had any other money or property except these bank accounts and her Garfield Avenue house, nor that she ever wasted or lost any money. It also appears that about two weeks before the mother's death, she conveyed her Prairie Avenue property to Adele with the understanding that Adele was to convey two of the houses to her sister,

Mrs. Morley, and one to her sister Martha, and retain one for herself. This understanding was carried out by Adele. The other property, in which the mother had simply a life estate and the fee in which, on her death, belonged to all four of her children, was, shortly after her death, voluntarily divided between them. After this partition, Frank, the son, brought suit against his sisters to set aside the mother's deed to Adele, which was pending when this case was tried, but it was afterward tried and lost by Frank, and the judgment was affirmed by this court, 223 S. W. 596. Adele testified that after her father's death she paid a note which her father owed to one Pat Durney, amounting to $1050. The paid note was not produced in evidence, she testifying it was lost. Her brother Frank testified that Adele told him that she had received the money from Durney for safe keeping and that he never heard of his father owing Durney anything. Adele denied any such conversation with her brother and testified that she never owed Durney a dollar, but that her father owed Durney the money and gave Durney his note for it, which she, with her mother's consent, paid after her father's death.

For certain years the vouchers or receipts for repairs were lost, so defendant Adele testified, and for those years a charge of $2,030.70 was made for repairs, based on the average expense for repairs in other years. The appellant does not contest all the charges against the estate contained in the Exhibit attached to the answer nor in fact any of them except the following: Average charges for repairs $2,030.70; Pat Durney note $1,050; living expenses $6,300; clothing for mother $1,050; rental of Adele's house on Garfield Avenue, in which family resided for about four years, $1,440; painting $119.80; cash paid Frank Prendiville $70; George Werner checks $367.50. Total $11,419. Appellant contends that defendant Adele should be charged with $40,000, rents collected after her father's death, during her mother's lifetime, being the amount claimed by plaintiff in his reply, instead of $31,668.25 admitted by defendant in her

answer.  That defendant should also be charged with $3500 which her mother, so the brother testified, turned over to her during the father's lifetime, but which defendant denies.

II.  It is contended by appellant's learned counsel that inasmuch as the evidence shows the defendant Adele destroyed what memoranda or books of original entry she had, showing the rents collected and fabricated books which she attempted to impose upon the court as being books of original entry, showing the amount of such collections, the rule of *omnia praesumuntur in odium spoliatoris* should be applied against her and she should

**Odium Spoliatoris.** charged as a matter of law with $40,000 the amount alleged in the reply as the total rents collected by her, as was done in the case of Pomeroy v. Benton, 77 Mo. 64.  That case was a suit in equity by one partner against another for accounting for profits alleged to have been made in the partnership business.  The evidence showed that defendant had destroyed the original books and fabricated other books which he introduced in evidence.  Under such circumstances, the court laid down the wholesome rule that, "spoliation of documentary evidence being proved against a defendant, that thereby he is held to admit the truth of the plaintiff's allegations; and this upon the ground that the law, in consequence of the fraud practiced, in consequence of the spoliation, will presume that the evidence destroyed would establish the plaintiff's demand to be just," citing many cases.  We do not wish to abate one "jot or title" from this doctrine, and hold that by reason of defendant's fabrication of said account books, the whole of the other testimony, it all being verbal, offered by her as to the rents collected, must also be disregarded.  The lower court held that the plaintiff's testimony as to the reasonable rental value of the property was incompetent to fix the amount of rents collected by the defendant because the extent of the vacancies was not shown by the evidence, with sufficient certainty to make a proper al-

lowance therefor. Without passing on the soundness of this ruling (as it is not necessary in the view we take of the case) we hold that in the absence of competent evidence on the part of the plaintiff relative thereto then said doctrine of *in odium spoliatoris* would apply and the law would fix the amount of such collections at $40,000, the amount alleged in the reply.

III. The question at the threshold of this case is whether, under the pleadings and the evidence, any case at all is made out against defendant requiring her to make an accounting to the plaintiff, her mother's administrator. We think not and this on the authority of the doctrine laid down in such cases by this court in Barnett v. Kemp, 258 Mo. 139, and kindred cases cited therein. In that case the mother had a son, the defendant George Kemp, and a daughter, Mrs. Hendrix. She owned a 600 acre farm near Lamonte, in Pettis County, and a livery barn in Lamonte. She resided with her son for twenty years before her death. She was ninety years of age when she died. During said twenty years, her son had collected and received the rents and profits of all her property and had also received from her some $6,000 in money. He used the rents and profits of her property and her money, as a common fund for the support of the mother and himself and family and care and improvement of her property. Although of such great age, she was a strong, forceful character, much more than her son, and knew how her money and property was being used and managed by her son and there was no evidence that she ever objected to his management or use of the rents he collected or the money he received from her. Upon her death the mother's administrator brought suit against the son for an accounting of the rents and money of his mother so collected, received and used by him. This court held that the administrator could not recover. That the mother never intended or expected that her son should account in any way or to any one except in

*Accounting: Parent and Child.*

the manner he had accounted to her in her lifetime. The court said, WALKER, J., delivering the opinion, 258 Mo. l. c. 156, 159, et seq.: "Aside from the administrator's testimony as to the statements made to him by the defendant, and that of Mrs. Hendrix and her son and granddaughter, there is not a vestige of testimony to show that Mrs. Kemp ever regarded her son as her agent in the business sense or demanded or expected, an accounting from him of the money expended under her direction. It is a reasonable presumption, however, that he accounted to her from time to time as the business was transacted. Of this he was not permitted to testify. The court's ruling in excluding his testimony is not open to criticism. . . . To sustain an action for an accounting, some such business relation must be shown to have existed between the parties as to *create a liability* on the part of one to the other. . . . In the absence of an express appointment or acceptance, much may, of course, be inferred as to the nature of a business relationship from the words and conduct of the parties and the correlative circumstances connected with the case. We have weighed all of these in an effort to determine whether the relation which existed between these parties was such as to create *a liability* on the part of the defendant. *The fact that the relation of principal and agent may in form have existed in this case, lends no force to plaintiff's claim unless it be shown that a liability was thereby created on the part of defendant.* . . .

"The mother being dead, the son's mouth is closed as to the nature of his relation with her, and the evidence in regard thereto, in the absence of other witnesses, must be gleaned from her conduct, so far as it can be shown by all the facts and circumstances in the case. While he acted for her and she kept a watchful eye upon his actions, she required him to keep no books, and if he accounted to her it must have been orally after each transaction. If he was required to make settlements, the conclusion is almost inevitable that they were made after the same manner as his reports. No syllable of testi-

mony indicates that she was at any time dissatisfied with this manner of proceeding, and it is almost proof positive that if dissatisfaction existed the ever open ears of the village gossip would have heard it from her at some time during the twenty years and more that the relation existed. Under this state of facts, in the utter absence of evidence to sustain it, we are asked by the plaintiff to require the defendant to do what was never required of him by his mother, viz.: render an account of his transactions. Living, Mrs. Sarah Kemp may have been unbusinesslike in her methods, but her power to do with her own as she chose cannot be questioned. If she chose to give her income or more to her son in exchange for a home and the companionship of those endeared to her by association and ties of blood, a court of conscience, whose decrees should be tempered by sentiment as well as a wholesome sense of right, should not interfere with her choice. Especially is this true where as in this case there is no allegation of fraud, unfair dealing, or undue influence, and no intimation that she was not, at all times, of sound mind. The plaintiff's petition is to be commended in this respect as, after the necessary formal allegations, it plants its plea for a decree upon defendant's mismanagement of the estate. In our opinion, the facts and circumstances do not justify equitable intervention.'' (Numerous cases cited). The italics are ours. We regard the above pronouncement in the Kemp Case as sound law, and as ruling this case for the defendant.

IV. But it is earnestly insisted by appellant's learned counsel that there is a wide difference between this case and the Kemp Case, in this, that defendant here, in her answer admits that she acted as her mother's agent and that her mother required her to keep and she did keep an account of the rents collected. It is true the answer contains such averment, but there is no allegation in the answer that she was required to keep an account of the moneys paid out for her mother, and all the evidence is that no such account was kept, which we believe and

find, the mother well knew, and never required or intended to require. But the answer also avers that defendant did fully account to her mother, to her mother's entire satisfaction, in her lifetime. It is immaterial to the merits of this case, therefore, that defendant failed to keep the account of rents collected required by the mother, and that defendant was her agent in form or in fact, if defendant accounted to the mother in her lifetime to the mother's satisfaction. We believe and find from all the evidence and circumstances in the record, that the mother must have known, substantially, how her daughter Adele was dealing with, managing, and using her money and property, and that she acquiesced therein. There is no evidence that she ever complained of any mismanagement or misuse of her funds by her daughter. While she was a woman of little education, and advanced in years, she seems to have been a woman of positive character, and to have taken an intelligent part in advising with her daughter about her business, and we find and believe from all the evidence and circumstances that she consented to the appropriation and use of her rents and moneys by her daughter in the manner used and appropriated by her. We also believe and are satisfied from the record that the mother did not intend or expect her daughter to be strictly liable to her as an agent to a principal—as if they were strangers to each other—or for her daughter to account to anyone but herself in her lifetime, as she did do. The mother could do as she pleased with her property, there being no creditors, and if she was satisfied with her daughter's accounting' to her in her lifetime, as we find she was, no one can compel her daughter to further account to them after her mother's death. Concluding as we do that the defendant is not liable to account at all to the plaintiff administrator, we need not consider the objection made by the appellant's learned counsel, to the accounting she did make or attempt to make in the trial of this case below. The case, in our opinion, was well decided by the learned chancellor on

the circuit, and should be, and is, affirmed. *Brown* and *Ragland, CC.,* concur.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur.